UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 06-22380-CIV-HUCK/SIMONTON

TERRA-ADI INTERNATIONAL
DADELAND, LLC, a Florida Limited
Liability Company, and TERRA-ADI
INTERNATIONAL DADELAND II,
LLC, a Florida Limited Liability Company

     Plaintiffs,

vs.

ZURICH AMERICAN INSURANCE
COMPANY, a New York Corporation,

     Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court upon Plaintiffs Terra-ADI International Dadeland, LLC, and Terra-ADI International Dadeland II, LLC's Motion for Summary Judgment as to Count II, filed October 25, 2006 (DE # 13), and Defendant Zurich American Insurance Company's ("Zurich") Cross Motion for Summary Judgment, filed November 15, 2006 (DE #23). The Court has considered the Motions and the parties' documentary submissions related thereto, and is duly advised in the premises. Through their respective Motions, the parties seek summary judgment on Count II of the Complaint. In Count II, Plaintiffs seek declaratory judgement pursuant to Chapter 86, Florida Statutes. Specifically, Plaintiffs seek declarations concerning the application of certain provisions in two insurance policies issued to them by Zurich. The parties agree that the matters addressed herein are matters of law, appropriate for resolution by summary judgment.

-1-

## BACKGROUND

Plaintiffs filed this action against their insurer, Zurich, to recover for damages caused by Hurricanes Katrina and Wilma in 2005. Those storms damaged Plaintiffs' real estate projects, Metropolis I and Metropolis II, which were under construction at the time in the Dadeland area of Miami-Dade County. The projects were covered by separate but substantially similar builder's risk insurance policies issued by Zurich. Although the parties agree as to the terms and conditions of the policies applicable to the issues in dispute and that the losses caused by the Hurricanes are covered under the windstorm provisions of the policies, there is a dispute as to the proper application and calculation of Plaintiffs' deductibles under the policies.

In addition to providing coverage for economic and property damage resulting from other perils, the policies at issue each provide coverage for up to $10 million of property damage resulting specifically from windstorm. That coverage, however, is subject to a deductible equal to "5% of the total insured values at risk at the time and place of loss subject to a minimum deduction of $250,000, as respects the peril of WINDSTORM." The problem is that the policies provide no guidance as to whether the "total insured values at risk" are those values insured against the peril of windstorm or the aggregate insured value of the project as a whole. Plaintiffs take the position that the "total insured values at risk . . , as respects the peril of WINDSTORM" means an amount of up to the $10 million dollar sublimit of coverage for to windstorm damage (depending on the level of completion of the project at the time of loss). Zurich, on the other hand, argues that the term means the insured value of the entire construction project as of the time of the loss (a value up to 31,500,000 for the Metropolis I project and up to $47,899,756 for the Metropolis II project, depending on the level of completion of the project at the time of loss).

The parties not only disagree as to how to calculate the deductible applicable to covered windstorm losses, they also disagree as to whether that is the only deductible applicable to Plaintiffs' claims. In addition to their claims for physical property losses, Plaintiffs have presented claims for the economic losses they suffered on account of delays in completion of their projects as a result of the hurricanes. Zurich insured Plaintiffs for up to 365 days of delay in completion, subject to a deductible period of 60 days for delays caused by windstorm. Zurich takes the position that Plaintiffs are subject to both the 5% windstorm deductible discussed above *and* the separate 60-day deductible period applicable to delays in completion. Plaintiffs, however, argue that they are only responsible for the 5% windstorm deductible because the policies contain language stating that when more than one deductible could be applied, "only the largest shall be applied."

Finally, Zurich argues that, because completion of the projects was delayed by two separate Hurricanes, Katrina and Wilma, two separate 60-day deductible periods apply to Plaintiffs' claims for delays in completion. Plaintiffs maintain that the 60-day deductible period for delay in completion does not apply in view of the larger 5% deductible for windstorm losses, but argue that even if it did, only one such deductible period would apply to each project. Plaintiffs base this argument on the fact that the delay in completion endorsement and deductible provisions in the policies make no reference to occurrences, but are instead based on the aggregate length of delay. The Court considers each of the foregoing issues in turn.

### I.   What Is The Proper Measure Of Plaintiffs' Windstorm Deductible?

As noted above, the deductible to be applied to Plaintiffs' physical property losses resulting from Hurricanes Katrina and Wilma depends on the interpretation of the term "total insured values at risk", as used in paragraph 7(D) of the insurance policies. That paragraph provides for a deductible equal to "5% of the total insured values at risk at the time and place of loss, as respects the peril of

-3-

WINDSTORM." Plaintiff reads the foregoing language to mean that the deductible is 5% of the value of property covered against windstorm damage, while Zurich reads the provision to mean that the deductible is 5% of the aggregate value of all covered property.

The construction of an insurance policy is a question of law to be determined by the court. *Allstate Ins. Co. v. Swain*, 921 So.2d 717, 719 (Fla. 3d DCA 2006)(citing *Jones v. Utica Mut. Ins. Co.*, 463 So.2d 1153, 1157 (Fla. 1985); and *State Farm Fire & Cas. Co. v. Castillo*, 829 So.2d 242, 244 (Fla. 3d DCA 2002)). If the language in an insurance policy is clear and unambiguous, it must be construed in accordance with the plain language of the policy as bargained for by the parties. *Auto-Owners Insurance Co. v. Anderson*, 756 So.2d 29, 33 (Fla. 2000)(quoting *Prudential Property & Cas. Ins. Co. v. Swindal*, 622 So.2d 467, 470 (Fla. 1993). If, however, the Court finds that more than one interpretation of a policy provision is possible, it must resolve the ambiguity against the insurer who drafted the language of the insurance contract. *See Allstate Ins. Co. v. Swain*, 921 So.2d at 719 (citing *Travelers Ins. Co. v. Smith*, 328 So.2d 870 (Fla. 3d DCA 1976)). Stated differently, where the language in a policy is subject to differing interpretations, it should be construed "liberally in favor of the insured and strictly against the insurer." *Flores v. Allstate Ins. Co.*, 819 So.2d 740, 744 (Fla. 2002). Moreover, "policy provisions excluding or limiting the insurer's liability are construed more strictly than coverage provisions." *General Star Indem. Co. v. West Florida Village Inn, Inc.*, 874 So.2d 26, 30 (Fla. 2d DCA 2004)(citing *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997). Importantly, when construing the relevant language in an insurance policy, a court should read the policy as a whole, in order to give every provision its full meaning and operative effect. *See Auto-Owners Ins. Co.*, 756 So.2d at 34.

The policies covering Metropolis I and Metropolis II each contain the following windstorm deductible provision:

> From the amount of each claim for insured loss or damage arising out of one OCCURRENCE, there shall be deducted the applicable amount shown below, and then the liability of the [Insurer] shall be only for the amount of such insured loss or damage in excess thereof, subject to the limit of liability, sublimits of liability or annual aggregate limits of liability set forth above.
>
> A. $25,000 physical loss or damage, except
>
> B. 5% of the total insured values at risk at the time and place of loss subject to a minimum deduction of $250,000, as respects the peril of FLOOD*
>
> C. 3% of the total insured values at risk at the time and place of loss subject to a minimum deduction of $100,000, as respects the peril of EARTHQUAKE*;
>
> D. 5% of the total insured values at risk at the time and place of loss subject to a minimum deduction of $250,000, as respects the peril of WINDSTORM*;
>
> E. $250,000 per occurrence for water damage other than FLOOD*.

The Court finds that the foregoing provision is ambiguous in its treatment of the deductible to be applied to windstorm damage and must, therefore, be construed in Plaintiffs' favor. Perhaps the best indication that the deductible provision is reasonably susceptible to more than one interpretation is the facial reasonableness of the parties' competing interpretations.

Plaintiffs argue that "insured values at risk" refers to the value of property insured against the "the peril of WINDSTORM." Indeed, the part of section 7(D) which reads "as respects the peril of WINDSTORM" can reasonably be interpreted as modifying that portion of the provision which reads "the total insured values at risk." Since there is a $10 million dollar sublimit on coverage against windstorm damage, Plaintiffs argue that $10 million dollars is the maximum "total insured values at risk . . ., as respects the peril of WINDSTORM." Accordingly, under Plaintiff's interpretation, the

-5-

maximum deductible applicable to claims for property damage caused by a windstorm is $500,000.00 (5% of $10 million).

Plaintiffs' interpretation of the deductible provision, which bases the deductible on the portion of its losses covered against windstorm and not the value of all its insured property, is consistent with the view of the purpose and calculation of insurance deductibles held by Florida courts. *See General Star Indemnity Company v. West Florida Village Inn, Inc.*, 874 So.2d 26, 32 (Fla. 2d DCA 2004)(discussing the purposes of a deductible and calculating a deductible on the basis of the insured's covered losses, as opposed to its total losses). While the facts of *General Star* are different than those here, the case is nevertheless instructive. The insurer in *General Star* limited its exposure by including the following deductible provision in its policy:

> We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the deductible shown in the declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable limit of Insurance . . .

Relying on the foregoing language, the insured property owner in *General Star* argued that its deductible should be offset by its total "amount of loss", not merely the portion of its losses covered by the insurance policy. The Second DCA disagreed, noting that

> [t]he notion that a deductible could be applied to loss that is not covered by the policy is fundamentally unreasonable. One need not look for a policy definition of 'amount of loss' when the plain meaning of the word 'deductible' provides ample guidance. A 'deductible' is 'a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against.' *Merriam-Webster's Collegiate Dictionary* 471 (deluxe ed. 1998). A deductible loses its meaning entirely if it is to apply to loss that is not covered by the policy.'
>
> 'Generally, the functional purpose of a deductible, which is frequently referred to as self-insurance, is to alter the point at which an insurance company's obligation to pay will ripen.' *Int'l Bankers Ins. Co. v. Arnone*, 552 So.2d 908, 911 (Fla. 1989). As self-insurance, a deductible requires the insured to share in the risk of loss, and worthy

> social goals are promoted. The insured is given monetary incentive to fulfill his or her duty to protect and to adequately maintain his or her property as well as a monetary disincentive to file relatively trivial claims, thereby contributing to the reduction of administrative costs and overall costs of insurance. Conversely, applying the deductible to non-covered loss does not serve the goals of having the insured share in the risk. Indeed, it threatens to render the deductible a nullity.
> *Id*. at 33, 34.

Thus, while not directly on point, *General Star* reveals Florida's view that a deductible is generally based upon the "loss of the kind insured against." *Id*. at 33 (citation omitted). In essence, Plaintiffs here argue that just as the insured party in *General Star* was not allowed to benefit from language in its insurance policy suggesting that its deductible was to be offset by the aggregate value of its covered *and* non-covered losses, Zurich should not be allowed to increase the applicable deductible on windstorm damage on the basis of the value of Plaintiffs property that is not covered against windstorms. Furthermore, Plaintiffs' interpretation of the deductible provision at issue here comports with the functional purposes of a deductible, as set forth in *General Star*. Under Plaintiffs' interpretation, they still share with Zurich the risk of loss from windstorms. That risk increases as the projects progress, but only up to value of $10 million, the sublimit on windstorm coverage. The Court finds that Plaintiffs' interpretation of the deductible provision at issue here is entirely reasonable.

Zurich takes the different, but also reasonable, position that the "total insured values at risk" is the aggregate value of physical property insured under the policies – not merely the value of property insured against the peril of windstorm. Indeed, the provision can be read to suggest that, "as respects the peril of WINDSTORM", the deductible is "5% of the total values at risk . . ." as represented by the then value of the project. Under this interpretation, the "total values at risk" are the total values of all property at risk in general and the term "as respects the peril of WINDSTORM" simply distinguishes the deductible applicable to windstorm damage from the deductibles applicable

to losses caused by other perils.  According to Zurich, the provision does not make "the total values at risk" or the deductible a function of the $10 million sublimit of windstorm coverage.

Zurich argues that the term "total values at risk" refers to the total value of physical property insured under the policies, as set forth in paragraph 6(B) of the policy Declarations (up to $31,500,000 for Metropolis I and up to $47,899,756 for Metropolis II, for any one Occurrence). Thus, in Zurich's view,  the maximum  deductible for windstorm damage is $1,575,000 for Metropolis I and $2,394,987.80 for Metropolis II (depending on the level of completion).  The deductible rises as Zurich's total exposure on the project rises.  Zurich notes, however, that the escalating deductible does not diminish Plaintiffs' recovery under the $10 million windstorm sublimit. Instead, the policies provide that the deductible is taken from "the amount of each claim for insured loss or damage arising out of any one occurrence" and not from the sublimit.  Zurich concedes that, even under its interpretation of the policies, it may be obligated to pay $10 million dollars to cover each project's windstorm damage, apart from the 5% deductible for which Plaintiffs are responsible. Accordingly, Zurich's position is also in accord with the principles of insurance deductibles set forth in *General Star*.

Zurich further argues that its interpretation of the language at issue is consistent with the recent construction of similar language in the case of *Beverly Hills Condominium 1-12, Inc.v. Aspen Specialty Insurance Co.*, Case No. 06-60980, by the Honorable Judge William P. Dimitrouleas of this District.  The issue in *Beverly Hills Condominium* was the meaning of the term "total insurable values", as used in the deductible provision of an insurance policy covering the insured plaintiff's condominium complex.   The provision at issue in *Beverly Hills Condominium* established a deductible equal to "5% of [total insurable values]" on claims related to windstorm damage.  Similar

to this case, the plaintiff in *Beverly Hills Condominium* argued that the term "total insurable values" referred to the insurance limit per occurrence, while the defendant insurer argued that it meant the total value of all the structures insured under the policies.[1] Judge Dimitrouleas found that the term "total insurable values" was susceptible to only one interpretation – the plain meaning ascribed to it by the defendant insurer. Judge Dimitriouleas found that "if the policy deductible for windstorm or hail was meant to be a percentage of the occurrence limit, the policy certainly would have used those words rather than the terms 'total insurable values.' Judge Dimitrouleas also noted that the Florida legislature had used the terms "insured values" in the same manner in §627.701(8), Florida Statutes (2004), which authorized insurers to "offer a deductible in an amount not exceeding 5 percent of the insured value with respect to a condominium association or cooperative association policy . . ."

While Judge Dimitrouleas' reasoning is sound under the circumstances of Beverly Hills Condomnium, it is not dispositive of the issue here.  The term "total insured values", as used in this case, is modified by the term, "as respects the peril of WINDSTORM."  Therein lies the ambiguity that compels this Court's holding that section 7(D) of the policies at issue here is reasonably susceptible to differing interpretations and must therefore be resolved in favor of Plaintiffs. Accordingly, Plaintiffs are entitled to summary judgment as to Count II insofar as it relates to the proper calculation of the deductible applicable to property damage resulting from windstorm.

---

[1] *See* ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, entered February 1, 2007 in Case No. 06-60980-CIV-DIMITROULEAS.

## II. Are Plaintiffs Subject to an Additional Deductible on Coverage of Their Economic Losses Caused by Delay in Completion?

In addition to their claims for property damage, Plaintiffs presented Zurich with claims for the economic losses they suffered on account of the delays in completing their projects. The Delay in Completion endorsement provides that

> . . . in the event of direct physical loss or damage insured under this Policy, coverage is hereby extended to include SOFT COSTS/ADDITIONAL EXPENSES, Loss of RENTAL INCOME and/or Loss of GROSS EARNINGS arising out of the resulting DELAY in completion of the project . . .

Zurich insured each Plaintiff for up to 365 days of delay in completion of its respective project, subject to a "Deductible Period" of "60 Days for DELAY due to flood, windstorm, or earthquake."[2]

Zurich argues that, in addition to the windstorm deductible discussed in section I above, Plaintiffs' are subject to the 60-day Deductible Period on losses attributed to delay in completion. Plaintiffs disagree and cite paragraph 7 of the Policy Declarations, which provides that

> [i]n the event that more than one deductible shown above or in any endorsement issued hereunder shall apply to insured physical loss or damage in any one OCCURRENCE, only the largest shall be applied.

Zurich responds by pointing out that the foregoing provision only limits the total deductible on "physical loss" claims which may be subject to multiple deductibles under the policy. The Court agrees with Zurich's argument that Plaintiffs' claims for delay in completion are not claims for "physical loss or damage." Instead, Plaintiffs claims for delay in completion seek recovery of purely economic – as opposed to "physical" – losses or damage. Indeed, the endorsement providing coverage for losses resulting from delay in completion recognizes a distinction between such losses

---

[2] The sublimit of coverage for delay in completion is $4,281,407 for the Metropolis I policy and $2,500,000 for the Metropolis II policy.

and the physical loss or damage from which they result. The endorsement provides that "in the event of direct physical loss or damage . . , coverage is extended to include SOFT COSTS/ADDITIONAL EXPENSES, Loss of RENTAL INCOME and/or Loss of GROSS EARNINGS arising out of the resulting DELAY in completion." The term "SOFT COSTS (ADDITIONAL EXPENSES)" is defined in the policies as including interest on borrowed money; realty taxes; advertising and promotional expenses; architects, engineers and consultant fees; administration expense; legal and accounting fees; and insurance premiums. Such costs and expenses are clearly not physical in nature. Therefore, the limitation on multiple deductibles set forth in paragraph 7 of the Policy Declarations does not apply.  The Deductible Period applicable to Plaintiffs' delay in completion losses applies independently of the 5% deductible on coverage of Plaintiffs' physical property damage. Accordingly, the Court GRANTS Zurich's Cross Motion for Summary Judgment, insofar as it relates to the issue of whether the delay in coverage deductible applies in addition to the windstorm deductible.

**III.    How Many Delay in Completion Deductible Periods Apply?**

Having determined that Plaintiffs' claims for economic losses resulting from delays in completion are subject to the 60-day Deductible Period, the Court must next decide whether two such Deductible Periods apply since the projects were delayed by two different Hurricanes.  As noted above, Plaintiffs are covered under the policies for economic losses resulting from up to 365 days of delay in the completion of their respective projects. A "DELAY*" is defined in the policies as "the period of time between the ANTICIPATED DATE OF COMPLETION* and the actual date on which commercial operations or use and occupancy can commence . . ."  In the case of Metropolis I, the "Anticipated Date of Completion" was June 27, 2005.   The Metropolis II was to be completed

by March 27, 2006. Coverage for losses resulting from delays in completion, however, is subject to a 60-day "Deductible Period" for delays caused by windstorm.

Plaintiffs argue that, if they are subject to any delay in completion deductible at all, they are only subject to one 60-day Deductible Period on each project. Zurich argues that because the delays were caused by two Hurricanes, Katrina and Wilma, two Deductible Periods apply and Plaintiffs are only entitled to recover their economic losses following 120 days from the Anticipated Dates of Completion. As demonstrated below, however, the Court finds that the policies are ambiguous on the question of how many Deductible Periods apply and, as was the case with the ambiguous windstorm deductible provision discussed above, such ambiguity must be resolved in Plaintiffs' favor.

Under the policies, Zurich is not liable to provide coverage "unless any one DELAY* exceeds [the Deductible Period]." Furthermore, Zurich is "only liable for such part of each DELAY* that is in excess of [the Deductible Period]." Based on the foregoing language, Zurich argues that the policies contemplate the possibility of multiple delays and therefore require multiple Deductible Periods. While it is true that the policies appear to contemplate multiple delays, the policies are not as clear on the question of whether the Deductible Period multiplies on account of multiple delay-causing events. In fact, there is basis in the policies for Plaintiff's opposite interpretation of the Deductible Period. The policies define "Deductible Period" as "the number of calendar days stated in the Declarations of this Endorsement, beginning with the ANTICIPATED DATE OF COMPLETION". As noted above, the "ANTICIPATED DATE OF COMPLETION" is a fixed date for each project.[3] In other words, pursuant to its definition in the policies, the Deductible Period

---

[3] In the case of Metropolis I, the Anticipated Date of Completion was June 27, 2005. Thus, the Deductible Period for Metropolis I began on June 27, 2005. The Metropolis II was to be completed by March 27, 2006 and its Deductible Period began on that date.

arguably begins on the same date regardless of the cause of a given delay or the number of previous delays. Under this interpretation of the Deductible Period provision, although Zurich would be correct in asserting that each of the delays caused by Hurricanes Wilma and Katrina was subject to its own 60-Day Deductible Period, each Deductible Period would have run concurrently from the same fixed dates (June 27, 2005 through August 25, 2005 in the case of Metropolis I, and March 27, 2006 through May 25, 2006 in the case of the Metropolis II).

The foregoing demonstrates that the policies are ambiguous as to whether the delays at issue are subject to a single 60-day Deductible Period, as Plaintiffs suggest, or a 120 day Deductible Period, as Zurich suggests. Again, where the language in an insurance policy is reasonably subject to differing interpretations, it should be construed "liberally in favor of the insured and strictly against the insurer." *Flores*, 819 So.2d at 744. Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED insofar as it relates to the issue of the proper Deductible Period applicable to its claims under the Delay in Completion Endorsements in the policies.

## **CONCLUSION**

For all the reasons set forth above, it is hereby

ORDERED that Plaintiffs Terra-ADI International Dadeland, LLC, and Terra-ADI International Dadeland II, LLC's Motion for Summary Judgment as to Count II is GRANTED in part and DENIED in part. It is further

ORDERED that Defendant Zurich American Insurance Company's Cross Motion for Summary Judgment is GRANTED in part and DENIED in part.

DONE and ORDERED in Chambers, Miami, Florida, this 1st day of March, 2007.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record