UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 06-22380-CIV-HUCK/SIMONTON

TERRA-ADI INTERNATIONAL
DADELAND, LLC, a Florida Limited
Liability Company, and TERRA-ADI
INTERNATIONAL DADELAND II,
LLC, a Florida Limited Liability Company

      Plaintiffs,
vs.

ZURICH AMERICAN INSURANCE
COMPANY, a New York Corporation,

      Defendant.
_____/

## ORDER ON CROSS MOTIONS TO ENFORCE SETTLEMENT AGREEMENT

This matter is before the Court on the parties' cross Motions to Enforce Settlement Agreement, both filed June 25, 2007 (DE ## 89 and 91). The Court has reviewed the Motions and the additional documents filed in connection therewith and is duly advised in the premises.

## BACKGROUND

On or about August 18, 2006, Plaintiffs filed their two-count Complaint in state court against their insurer, Zurich American Insurance Company ("Zurich"), to recover for damages caused by Hurricanes Katrina and Wilma in 2005. The two storms damaged and delayed completion of Plaintiffs' real estate projects, Metropolis I and Metropolis II, which were under construction at the time in the Dadeland area of Miami-Dade County. The projects were covered by separate but substantially similar builder's risk insurance policies issued by Zurich. Although the parties had agreed as to the terms and conditions of the policies applicable to the issues in dispute and that the losses caused by the Hurricanes were covered under the windstorm provisions of the policies, there was a dispute as to the proper application and calculation of Plaintiffs' deductibles under the policies. Count I of Plaintiffs' Complaint charged that Zurich breached its contracts with Plaintiffs by failing

to correctly calculate the deductibles applicable under the police and improperly applying multiple deductibles. Count II of the Complaint sought declaratory judgment as to the proper calculation of deductibles under the policies.

Defendant Zurich removed the action to this Court on September 25, 2006. On cross motions for summary judgment as to Count II (for declaratory relief), the Court resolved the issues regarding the proper calculation of deductibles under the policies (*see* ORDER ON MOTIONS FOR SUMMARY JUDGMENT, entered March 1, 2007 (DE #76)).   Subsequently, on the parties' cross motions for partial summary judgment as to Count I, the Court resolved an additional issue concerning the sub-limits of coverage available for delays in completion (*see* ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT AS TO COUNT I OF THE COMPLAINT, entered March 1, 2007 (DE #77)).

On April 25, 2007 – five days before trial of the matter was to commence –  the parties advised the Court by written stipulation that they had reached a settlement as to all of the issues in dispute.  Following the parties' stipulation of settlement, the Court entered an Order on April 26, 2007, dismissing the case with prejudice and retaining jurisdiction for a period of sixty (60) days for the sole purpose of enforcing the settlement agreement between the parties.  The parties have now availed themselves of the Court's jurisdiction over the enforcement of their settlement agreement.  Plaintiffs invoke the settlement agreement in an attempt to avoid payment of a $141,736.00 premium Zurich claims became due on January 31, 2007.  Zurich's Motion for Enforcement, in turn, seeks a declaration from this Court that the  January 2007 premium falls outside the scope of the parties' settlement agreement.

The parties agree that their "settlement agreement" is embodied by a series of communications begun by a March 28, 2007 letter from Plaintiffs' counsel to Zurich's counsel.  That letter discusses the possibility of a "global settlement" of Plaintiffs' claims and makes an offer to dismiss the case with prejudice in exchange for a single payment from Zurich of $2,700,000.  Zurich's counsel responded to the letter by e-mail the next day (March 29, 2007), with a counteroffer of $1,800,000  in exchange for dismissal of the action and, among other things, Plaintiffs' *unilateral* release of Zurich.  One day later (March 30, 2007), Plaintiffs' counsel e-mailed a responsive offer of $2,400,000.00 and stated that Zurich's conditions are "appropriate and basically acceptable, but reserve[d] the right to review and approve the exact language." That afternoon, the parties continued to negotiate the amount of the lump sum payment until Zurich ultimately agreed to Plaintiffs' offer to "wrap this case up at $2.2

million." Zurich's counsel's email agreeing to the $2,200,000.00 figure specified that the "[p]rior conditions set forth earlier in this email thread apply" and that the parties would "formalize the paperwork" the following week.

On April 3, 2007, Zurich submitted to Plaintiffs a draft "Settlement, Release and Indemnity Agreement." In pertinent part, the document provided for a release of Plaintiffs' claims against Zurich in exchange for a payment from Zurich of $2,200,000.00. On April 5, 2007, Plaintiffs responded with a revised draft of the document, entitled "Settlement, Mutual General Release and Mutual Indemnity Agreement." Whereas the initial draft agreement provided only for unilateral release and indemnity of Zurich by Plaintiffs, the revised document provided for mutual releases and indemnity, including a specific release by Zurich of "any and all claims they may have against [Plaintiffs] with respect to any alleged outstanding and/or unissued premium charges under the Policies. . ." After the parties' exchange of the revised draft, the disagreement as to scope of the supposed settlement to the January 2007 premium became apparent. Thereafter, the parties were unable to enter into a mutually agreeable written settlement agreement.

## ANALYSIS

Although the parties were not able to "formalize the paperwork" concerning their settlement agreement, neither side argues that an agreement was not, in fact, made. Both sides agree that the agreement is embodied in the series of communications which began with Plaintiffs' counsel's letter on March 28, 2007 and concluded with Zurich's counsel's March 30, 2007 email message agreeing to a figure of $2,200,000.00 to settle the case. The only question, therefore, is whether the foregoing agreement included Zurich's waiver of the January 2007 premium it claimed was outstanding at the time. The Court finds that the agreement did not require Zurich to waive the $141,736.00 premium.

Plaintiffs' counsel opened the settlement negotiations in hopes of achieving what he referred to as a "global settlement." Under Plaintiffs' counsel's initial proposal, Plaintiffs would dismiss their case with prejudice in exchange for $2,700,000.00 from Zurich. Plaintiffs' claims in this case dealt exclusively with the way in which Zurich had calculated the deductibles applicable under the subject policies and, therefore, the total amount of coverage Zurich's liability for Plaintiffs' hurricane losses.

In their Complaint, Plaintiffs did not take issue with the premiums they were obligated to pay Zurich under the policies. Plaintiffs' counsel made no mention of premiums in his opening settlement offer. Nor did Plaintiffs' counsel request any release or waiver of any kind from Zurich. The offer was simple: Plaintiffs would dismiss the case in exchange for a lump sum payment from Zurich.

On March 29, 2007, Zurich's counsel responded by e-mail with a counteroffer of $1,800,000 in exchange for dismissal of the action with prejudice *plus* (1) a general release of all of Plaintiffs' claims arising from any of the hurricane losses at issue, (2) Plaintiffs' withdrawal of the Civil Remedy Notice it had filed with Florida's Department of Financial Services and (3) a promise to keep the terms of the settlement confidential. Plaintiffs' counsel responded with a request for more money ($2,400,000.00), but acknowledged that Zurich's "conditions [were] appropriate and basically acceptable. . ." After further negotiation only as to the lump sum Zurich would pay, the parties arrived at a mutually acceptable dollar amount, $2,200,000.00. Therefore, the agreement was that Zurich would pay Plaintiffs $2,200,000.00 and Plaintiffs would dismiss their case, release Zurich from liability related to the hurricane losses at issue, withdraw their Civil Remedy Notice, and keep the terms of the deal a secret. At no point during these negotiations did either party mention the outstanding January 2007 premium or any waiver, release or indemnification by Zurich. Nor did Plaintiffs ever request such relief from the Court in the course of their action against Zurich. The validity of the premiums due from Plaintiffs was never raised as an issue in this case. Therefore, neither party could reasonably believe, on the basis of the communications quoted above, that the settlement agreement required Zurich to waive its right to collect the January 2007 premium. Although in their initial March 30, 2007 email to Zurich's counsel, Plaintiffs reserved the right "to review and approve the exact language" of the settlement, that right does not allow them to vary to the essential terms to which they had already agreed. Accordingly, it is hereby

ORDERED that Plaintiffs' Motion to Enforce Settlement Agreement is DENIED and Zurich's Motion to Enforce the Settlement Agreement is GRANTED.

DONE AND ORDERED in Chambers, Miami, Florida, this 24th day of August, 2007.

_____
Paul C. Huck
United States District Judge

Copies furnished to
counsel of record.